IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 24-493 (EGS) |
| | : | |
| v. | : | 18 U.S.C. § 111(a)(1) |
| | : | |
| ROBERT GIACCHETTI, | : | **FILED** |
| | : | |
| Defendant. | : | NOV 20 2024 |
| | : | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Robert Giacchetti, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.    At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.    Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

*The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.    The defendant drove from his home in Illinois to Washington D.C. on either January 4 or January 5, 2021.

9.    On January 6, 2021, the defendant attended the entirety of then-President Trump's speech at the Ellipse before heading to the U.S. Capitol.

10.    While on a walkway on the South side of the Capitol Building on restricted Capitol Grounds, the defendant used a bullhorn to shout at law enforcement officers responding to the riot, yelling at them "You pieces of shit! Where are you when they're taking our cities down? Nowhere you fucking [unintelligible]! Fuck you, you pussy! Protect your jobs, go protect the constitution!"

11.    The defendant confronted a group of police officers who were attempting to hold a police line on the North Terrace of the Capitol's exterior. At one point during the confrontation, the defendant used his body – specifically his right elbow and hip – to push against a police riot shield, driving the officer who held it backwards. The officer was lawfully engaged in the performance of their official duties assisting officers of the United States who were then engaged in the performance of their official duties.  During this incident, the defendant was wearing a gas mask.

12.    The defendant entered the U.S. Capitol building through the Upper West Terrace Door at approximately 2:34 p.m.

13.    Once inside the Capitol, the defendant climbed the stairs to the Rotunda. From there he went into the Rotunda Lobby, where he joined a crowd of rioters amassed just inside the Rotunda Doors.

14.    At 2:37 p.m., the defendant ascended the Gallery Stairs, and then walked throughout the second floor of building, including entering the Senate Gallery.

15.    At the top of the Gallery Stairs, the defendant used his bullhorn to repeatedly chant "Treason!" to the other rioters below.

16.    From there, the defendant marched down the East Corridor with a crowd of other rioters, some of whom were banging on closed office doors and audibly shouting "1776!" The defendant also used his bullhorn to yell during this time.

17.    At approximately 2:43 p.m., the defendant entered the Senate Gallery. While in the Senate Gallery, the defendant used the bullhorn to yell, "Where'd you go?!" and "Treason!"

18.    After exiting the Senate Gallery, the defendant entered the Ohio Clock Corridor, where he joined a group of rioters confronting a small group of police officers who were trying to prevent the rioters from advancing towards the main entrance to the Senate chamber.

19.    The defendant exited the Capitol via the Senate Carriage Door at approximately 2:55 p.m.

20.    After exiting the Capitol, the defendant confronted journalists who were outside on the Capitol Grounds. As part of this confrontation, the defendant destroyed media equipment belonging to the Associated Press while yelling at journalists outside the U.S. Capitol. He shouted "Fuck you!" and pushed over standing lights and a dolly. At one point he knocked down a camera on a tripod, which then struck a journalist. Following this incident, the journalists fled the area.

21.    On February 14, 2024, the defendant submitted to a telephonic interview with the Federal Bureau of Investigation. During that interview, the defendant denied encountering any members of the media, destroying any property, or participating in any violence on January 6, 2021.

### *Elements of the Offense*

22.    The parties agree that Assaulting, Resisting, or Impeding Certain Officers under 18 U.S.C. § 111(a)(1) requires the following elements:

    a.    First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer.

    b.    Second, the defendant did such acts forcibly.

    c.    Third, the defendant did such acts voluntarily and intentionally.

d.  Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of their official duties assisting officers of the United States who were then engaged in the performance of their official duties.

e.  Fifth, the defendant made physical contact with the officer, or acted with the intent to commit another felony. For the purposes of this element, "another felony" refers to Civil Disorder under 18 U.S.C. § 231(a)(3).

### *Defendant's Acknowledgments*

23.    The defendant knowingly and voluntarily admits to all the elements as set forth above.  Specifically, the defendant admits that, during the events described in paragraph 11, he made physical contact with the riot shield held by the officer and intended to obstruct, impede, or interfere with that officer and other officers in the police line.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Mindy Deranek*
Mindy Deranek
Assistant United States Attorney
Washington State Bar No. 43085
Capitol Siege Section
U.S. Attorney's Office for the
     District of Columbia
Telephone No: (202) 252-7776
Email Address: mindy.deranek@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Robert Giacchetti, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/20/24

Robert Giacchetti
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/23/24

Nishay Sanan, Esq.
Attorney for Defendant